[No. B204345. Second Dist., Div. Eight. Mar. 5, 2009.]

A.N., a Minor, etc., Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

McNicholas & McNicholas, Matthew S. McNicholas, Christina J. Smith, Robert P. Wargo; Esner, Chang & Ellis, Andrew N. Chang and Stuart B. Esner for Plaintiff and Appellant.

Collins, Collins, Muir & Stewart, Tomas A. Guterres, Douglas Fee, Eric C. Brown and Christian E. Foy Nagy for Defendants and Respondents.

**OPINION**

**BIGELOW, J.**—A.N. filed a complaint for damages against Los Angeles County claiming he had been harmed while in custody at juvenile hall. Less than a month before trial, A.N. filed and served four "Doe" amendments (Code Civ. Proc., § 474), and served two previously filed Doe amendments, all to bring six county employees into the action as defendants.[1] The individual defendants filed a "motion to quash" the Doe amendments on the ground that A.N. had unreasonably delayed in filing and serving the amendments. The trial court granted the motion. We affirm.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise noted.

## FACTS

*The Pleadings*

In May 2005, A.N. (by and through his guardian ad litem) filed a complaint for damages against Los Angeles County, Los Angeles County Sheriff Lee Baca, and "John Doe Deputy Sheriff Officers 1 through 15." A.N.'s complaint alleged causes of action for negligence, violation of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.), failure to prevent violation of civil rights, violation of constitutional rights, conspiracy to conceal violation of constitutional rights, and violation of 42 United States Code section 1985. All of A.N.'s causes of action were based on the following allegations: In April 2004, A.N. was in custody at the county's juvenile hall facility in Sylmar. While A.N. was in custody, John Doe Deputy Sheriffs 1 through 15 housed A.N. with a juvenile whom the officers knew or should have known had violent propensities, and thereafter unreasonably failed to supervise A.N.'s safety. The other juvenile sexually abused A.N.

In October 2005, A.N. retained new counsel and in November 2005, A.N. filed a first amended complaint naming the county and "Does 1 through 100" as defendants. A.N.'s amended complaint alleged causes of action for negligence, negligent supervision, and negligent infliction of emotional distress. The underlying factual allegations largely remained the same as in his original complaint.

On January 18, 2006, A.N. filed a Doe amendment to his operative complaint, naming county employee Edward Anhalt as Doe 16. Two days later, A.N. served Anhalt with a summons and complaint, including the amendment naming Anhalt as Doe 16. Shortly thereafter, Anhalt answered the complaint. The Doe amendment filed by A.N. in January 2006 has never been the subject of any dispute in this case and is not an issue in the appeal before us today.

*Subsequent Events During the Litigation*

On March 27, 2006, A.N. filed a second Doe amendment to his operative complaint, naming county employee Gilbert Rodriguez as Doe 1. After filing the Doe amendment, A.N. did not effect service of process on Rodriguez.

In August and September 2006, the respective lawyers for A.N. and the county executed a stipulation which included the following provisions:

"1. Plaintiff . . . will file a complaint against individual county employees and file Doe amendments for other individuals whose identities are currently unknown to Plaintiff exclusively on state law negligence theories.

"2. Defendant County . . . will indemnify its personnel for their negligence notwithstanding . . . Government Code [section] 844.6, [subdivision] (d) . . . [¶] . . . [¶] Accordingly, to the extent that Plaintiff is successful in proving his negligence claims, County agrees to indemnify its personnel for injuries that arose out of an act or omission occurring within the course and scope of his or her employment. County does not waive any other statutory or common law immunities or affirmative defenses. . . ." (Capitalization omitted.)

At about the same time as the parties' stipulation, the trial court set a trial date for A.N.'s case for January 8, 2007. On August 22, 2006, the trial court granted A.N.'s request to correct his pleadings so that the Doe amendment, which he had filed in January 2006, would identify Edward Anhalt as Doe 2, rather than Doe 16. During the latter part of 2006, the parties stipulated to continue the trial date to May 7, 2007.

On March 9, 2007, A.N. filed a third Doe amendment to his operative complaint, naming county employee Ron Barrett as Doe 3. After filing the Doe amendment, A.N. did not effect service of process on Barrett.

On April 2, 2007, the trial court granted the county's ex parte application for an order continuing the then pending May trial date. The record suggests that the court re-set the trial date for September 10, 2007.

*The Doe Amendments Shortly Before Trial*

On August 22, 2007, less than three weeks before the date set for trial, A.N. filed two Doe amendments to his operative complaint, one naming county employee David Jimenez as Doe 4, and the other naming county employee Paula Heath as Doe 5.

On August 29, 2007, A.N. filed two more Doe amendments to his operative complaint, one naming county employee David Sanchez as Doe 6, and the other naming county employee Robert Phillips as Doe 7.

*The Service of Process Shortly Before Trial*

On August 28, 2007, less than two weeks before the day set for trial, A.N. served Gilbert Rodriguez with a summons and complaint, including the Doe amendment filed in March 2006 naming him as Doe 1.

On August 30, 2007, A.N. served Ron Barrett with a summons and complaint, including the Doe amendment filed in March 2007 naming him as Doe 3. On the same day, A.N. served David Jimenez with a summons and complaint, including the Doe amendment naming him as Doe 4. Also on the

same day, A.N. served David Sanchez with a summons and complaint, including the Doe amendment naming him as Doe 6.

On September 5, 2007, A.N. served Paula Heath with a summons and complaint, including the Doe amendment naming her as Doe 5.

On September 7, 2007, A.N. served Robert Phillips with a summons and complaint, including the Doe amendment naming him as Doe 7.

On a date not readily ascertainable from the record on appeal, the trial court trailed the trial date from September 10 to October 15, 2007.

*The Motion Challenging the Doe Amendments*

On September 24, 2007, Gilbert Rodriguez (Doe 1), Ron Barrett (Doe 3), David Jimenez (Doe 4), Paula Heath (Doe 5), David Sanchez (Doe 6), and Robert Phillips (Doe 7) filed a document, which they entitled a "motion to quash service."[2] The Doe Defendants' motion argued that A.N. had known their identity for a significant period of time but had nonetheless unreasonably delayed in naming and serving them as Doe Defendants under section 474. The Doe Defendants further argued that they had been prejudiced by the delay and requested that the trial court grant their motion to quash for that reason, or grant such other relief as the court deemed just and proper.

On October 22, 2007, the trial court granted the Doe Defendants' motion to quash for the following written reason: "Unreasonable delay in filing an amended pleading after discovering a doe defendant's identity may bar the plaintiff from using the fictitious name device if the delay is prejudicial. *Barrows v. American Motors* [*Corp.*] (1983) 144 Cal.App.3rd 1, 9 [192 Cal.Rptr. 380]."

A.N. filed a timely notice of appeal.

## DISCUSSION

### I. *Section 418.10 Is Irrelevant*

A.N. contends the trial court acted in "excess of its authority" when it granted the Doe Defendants' motion to quash under section 418.10. More

---

[2] The parties' arguments on appeal have essentially invited us to consider the Doe amendments together and advance the parties' respective positions that the Doe amendments either all rise or all fall together. For this reason, we hereafter refer to the individual defendants collectively as the "Doe Defendants."

specifically, A.N. argues "section 418.10 is limited to cases where there is a lack of personal jurisdiction, which . . . is not challenged here." A.N.'s arguments fail to persuade us to find reversible error because, insofar as we read the record on appeal, A.N. is simply mistaken in thinking that section 418.10 applies to his case.

■ The Doe Defendants' perhaps misnamed "motion to quash" did not discuss nor even cite section 418.10; neither did the trial court's order granting the motion. The issue presented to the trial court by the Doe Defendants' motion was whether A.N. could avail himself of the Doe amendment procedure authorized by section 474 and bring the Doe Defendants into the case on the eve of trial. The *substance* of the "motion to quash" is what mattered, not its label. (Civ. Code, § 3528; see also *Barrows*, *supra*, 144 Cal.App.3d at p. 9.) The trial court ruled that A.N. could not avail himself of the Doe amendment procedure authorized by section 474 because he had unreasonably delayed in filing the Doe amendments, which named the Doe Defendants as parties.

Our role is to review the decision actually made by the trial court. For this reason, we summarily reject all of A.N.'s arguments insofar as they are based on section 418.10 and precepts of personal jurisdiction. Such matters are not relevant to the issues involved in this appeal.

II. *The Trial Court's Doe Amendment Ruling Is Not Infected with Error*

A.N. contends the trial court's order—effectively dismissing his action against the Doe Defendants—must be reversed because "the '*Barrows*' standard . . . was not met." We disagree.

A. *Barrows*

These were the extant circumstances in *Barrows*: plaintiffs' son died in a vehicle accident in November 1978. In January 1979, plaintiffs filed a complaint for wrongful death, followed by an amended complaint in October 1980. Defendants and respondents filed a demurrer arguing that plaintiffs' claim was barred by the statute of limitations because the amended complaint failed to allege that respondents were the Doe defendants fictitiously named in the original complaint. When plaintiffs responded to the demurrer by offering to amend their pleading to include the omitted language, respondents then submitted evidence in an attempt to show that plaintiffs had actual knowledge of respondents' identity long before the amended complaint was filed and thus, could not avail themselves of the Doe amendment procedure set forth in section 474. The trial court sustained the demurrer without leave to amend and entered a judgment of dismissal in favor of defendants.

(*Barrows, supra*, 144 Cal.App.3d at pp. 5–6.) Division Five of our court reversed the judgment of dismissal.

For purposes of the appeal before us today, the following parts of Division Five's opinion in *Barrows* are important:

■ "The purpose of . . . section 474 is to enable a plaintiff who is ignorant of the identity of the defendant to file his complaint before his claim is barred by the statute of limitations. . . . So long as the amended pleading relates to the same general set of facts as the original complaint, a defendant sued by fictitious name and later brought in by amendment substituting his true name is considered a party to the action from its commencement for purposes of the statute of limitations. [Citation.] Case law makes clear that where . . . standard Doe allegations are contained in [an] original complaint against the driver of a vehicle, it is proper to amend the complaint to bring in other defendants on warranty and product liability theories; since the amendment involves the same accident and injury, the amendment relates back to satisfy the statute of limitations. [Citations.]

"Respondents argue, however, that [evidence] shows that [plaintiffs] had actual knowledge of the identity and involvement of [respondents] on November 10, 1979, and that therefore amendment should be denied because plaintiffs unreasonably delayed by not filing the first amended complaint until October 27, 1980 . . . . Before analyzing respondents' [argument], however, we comment on three preliminary issues. [¶] . . . The first amended complaint . . . was filed on October 27, 1980, *less* than one year from the date of the [evidence showing plaintiffs' knowledge of defendants' identity]. Although the . . . amended complaint was defective because [it] inadvertently omitted an allegation that respondents are the defendants previously sued by fictitious name in the original complaint, the defect was easily curable and, if this were a 'statute of limitations' problem, the filing of the first amended complaint would be deemed the date of commencement. [Citations.] Thus the issue concerning the [postknowledge] delay is not a statute of limitations problem but one of unreasonable delay, or as respondents elsewhere phrase it, laches.

■ "Second, although plaintiffs contend that their subsequently acquired knowledge is irrelevant so long as plaintiffs were unaware of the identity of Doe defendants at the time of filing the original complaint, substantial authority supports respondents' argument that unreasonable delay in filing an amendment after actually acquiring such knowledge can bar a plaintiff's resort to the fictitious name procedure. . . . [(See *Barnes v. Wilson* (1974) 40 Cal.App.3d 199, 206 [114 Cal.Rptr. 839]; *Smeltzley v. Nicholson Mfg. Co.* (1977) 18 Cal.3d 932, 939 [136 Cal.Rptr. 269, 559 P.2d 624]; *Mishalow v.*

*Horwald* (1964) 231 Cal.App.2d 517, 524 [41 Cal.Rptr. 895]; *Randall v. Beber* (1951) 107 Cal.App.2d 692, 708–709 [237 P.2d 994].)]

"Third, there is a question whether respondents used a proper procedural vehicle to present their evidence that [plaintiffs] had acquired the relevant knowledge. Plaintiffs contend that consideration of [evidence] was improper because on demurrer the court is limited to facts shown on the face of the complaint. [Citation.] [However,] the evidence offered by respondents did not address the . . . defect of pleading in the first amended complaint. Rather, respondents contended that unreasonable delay by [plaintiffs], assertedly proved by evidence outside the pleadings, should bar the action. In effect, though not in form, respondents were moving for summary judgment on grounds of delay, and [their] showing should be treated as such a motion. [Citations.]

■ "Considering [the evidence], we find respondents did not show that plaintiffs should be barred from amending under section 474 on grounds of unreasonable delay in filing the amendment. . . . [U]nder *Smeltzley* v. *Nicholson Mfg. Co., supra,* 18 Cal.3d at page 939, respondents must show not only that the plaintiff was dilatory but also 'that defendant suffered prejudice from any such delay.' Respondents' motion in this case made no showing whatsoever of any specific prejudice to respondents from the delay between the [time the evidence was developed] and the filing of the amended complaint naming respondents as defendants. The only prejudice even mentioned by respondents, in supporting points and authorities, is the prejudice generally presumed from the policy of the statute of limitations. In order to prevail on the kind of motion involved here, however, a defendant must show specific prejudice. [Citation.] Under [the Doe amendment statute], a new defendant may be added by amendment long after the original statute of limitations has expired, because the amendment is deemed to relate back to the filing of the original complaint. This is a statutory right of the plaintiff which has been considered by the courts not to be unfair to the defendant, even though as a practical matter it drastically extends the statute of limitations as to such defendant. [Citations.] Thus in establishing the prejudice required by *Smeltzley,* a defendant cannot rely simply on the general policy of the applicable statute of limitations. Respondents here made no showing at all of any specific prejudice." (*Barrows, supra,* 144 Cal.App.3d at pp. 7–10.)

### B. Barrows*'s Place in "Doe" Jurisprudence*

■ In our view, three lessons may be drawn from *Barrows*: First, section 474 includes an implicit requirement that a plaintiff may not "unreasonably delay" his or her filing of a Doe amendment after learning a defendant's

identity. Second, a defendant named in an action by a Doe amendment under section 474 may challenge the amendment by way of an evidence-based motion, which argues that the plaintiff "unreasonable delayed" his or her filing of the challenged amendment. Third, "unreasonable delay" within the meaning of *Barrows* includes a prejudice element, which requires a showing by the defendant that he or she would suffer prejudice from plaintiff's delay in filing the Doe amendment.

### C. Barrows *Applied*

We begin by considering the appropriate standard of review on an appeal from a trial court's order granting or denying a defendant's *Barrows* motion. Although not directly addressed in A.N.'s opening brief, we conclude that a trial court's ruling on a *Barrows* motion should be reviewed in much the same manner as a trial court's ruling on a motion for leave to file an amended pleading. In both contexts, the fundamental issue is whether a party should be permitted to expand the scope of his or her claims or defenses. The rules governing appellate review of pleading issues are well settled: the trial court is vested with broad discretion when presented with a motion for leave to file an amended pleading and may consider such factors as whether the proffered pleading states facts which could have been pleaded earlier, and whether a party has established a reasonable excuse for the delay. (*Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1097 [31 Cal.Rptr.3d 43]; see also *Randall v. Beber* (1951) 107 Cal.App.2d 692, 708–709 [237 P.2d 994].) An order granting or denying leave to amend a pleading will not be disturbed absent a showing that the trial court abused its discretion. (*Emerald Bay, supra*, at p. 1097.) The test for abuse of discretion is whether the trial court's decision is arbitrary, capricious or without basis in reason. (*Blackman v. Burrows* (1987) 193 Cal.App.3d 889, 893 [238 Cal.Rptr. 642].)

We find no abuse of discretion in the trial court's decision to grant the *Barrows* motion, which is the object of the appeal before us today. These are the foundational facts: A.N. filed his original complaint in May 2005 and his amended complaint in November 2005. A.N. filed the bulk of his Doe amendments in August 2007 and served most of his Doe amendments at that time.

We see no reasonable explanation in the record for A.N.'s roughly two-year delay in filing and serving the Doe amendments. A.N.'s opposition to the Doe Defendants' *Barrows* motion was supported by two declarations from A.N.'s counsel, neither of which, in our view, shows a reasonable excuse for the delay. In his original declaration, A.N.'s counsel expressly stated that "[f]rom February 2006 through June 2007 Plaintiff propounded extensive

written discovery upon [the county] regarding among, other things, the identity of those county employees who had anything to do with Plaintiff on the night he was sexually assaulted." But we see no express statement explaining the dates upon which A.N.'s counsel learned the names of the Doe Defendants, nor do we see any explanation of whether and why their identities could not have been learned before August 2007.

And, apart from what A.N.'s counsel *did not* explain, what he *did* explain belies a finding that the delay in filing the Doe amendments until August 2007 was reasonable. For example, A.N.'s counsel expressly stated that, in December 2006, he deposed Harry Devenport, the "officer of the day" at the juvenile hall on the day A.N. reported he had been attacked. There is also an express statement that, in December 2006, A.N.'s counsel deposed Vicente Del Rio, the guard who sent A.N. to the nurse on the day he reported that he had been attacked. There is also an express statement that, in February 2007, A.N.'s counsel deposed Paula Heath (Doe 5), the assistant superintendent of the juvenile hall when A.N. was allegedly attacked. And, there is also an express statement that, in December 2006, counsel deposed David Sanchez (Doe 6), the group night supervisor at the juvenile hall on the night of the attack "who responded to Plaintiff's call for help . . . ." In short, A.N.'s counsel implicitly, if not expressly, conceded that he knew information, or had access to information, in late 2006 and early 2007, regarding who had been involved in the incident giving rise to A.N.'s claims.

The extensive explanation by A.N.'s counsel regarding mediations, and regarding the depositions which were taken through August 2007, does not, in our view, explain why the Doe amendments could not be filed earlier than they were. A pending mediation does not stop the filing of a Doe amendment; a pending deposition does not stop the filing of a Doe amendment. The relevant factor is not the work that *was* being done on the case through August 2007, but the reasons for what *was not* being accomplished in the case, to wit, the filing of the Doe amendments.

There remains, then, only one issue: prejudice. The trial court's decision to grant the motion to quash the Doe Amendments implicitly incorporates a finding of prejudice, and the court's express comments at the hearing on the motion—to the effect that it was "very concerned" about the Doe Defendants being "brought into this spinning vortex shortly before trial"—confirms such an implicit finding. We agree with the trial court's finding. The Doe Defendants were brought into the case less than one month before the case was set to begin trial, and it does not require speculation to recognize that a party who is drawn into litigation on the eve of trial will face difficulties in preparing a defense in such short order.

The cases cited by A.N. do not persuade us to reach a different result. In *Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290 [216 Cal.Rptr. 443, 702 P.2d 601], the Supreme Court recognized the strong policy in favor of liberal allowance of pleadings and observed that reversal of a trial court's order denying an amendment is "common" where the plaintiff makes a showing on appeal that he or she was prejudiced by the trial court's order. (*Id.* at pp. 296–297.) In *Mesler*, the Supreme Court concluded the trial court should have allowed plaintiff to amend to add an alter ego issue because: the trial court denied the amendment stating it would result in continuing plaintiff's time for trial yet plaintiff requested the amendment; defendant was not surprised by plaintiff's reliance on the theory; the related concept of agency had been alleged in the original complaint; and plaintiff had relied on the alter ego theory in opposition to other motions. (*Id.* at p. 297.) In A.N.'s current case, allowing the Doe amendments would have resulted in bringing in entirely new parties who would have had to prepare to defend against a case in short order; and although they may have been involved in discovery, they had no advance notice they were being sued. In essence, this case is entirely unlike *Mesler*.

A.N.'s reliance on *Honig v. Financial Corp. of America* (1992) 6 Cal.App.4th 960 [7 Cal.Rptr.2d 922] (*Honig*), is equally unavailing in our view. In *Honig*, the plaintiff filed a motion to amend a complaint for wrongful termination to allege additional facts supporting his wrongful termination claim and to allege a cause of action for defamation. The trial court denied the motion. Division Five of our court reversed, finding that "no prejudice would have resulted had the amendments been permitted." (*Id.* at p. 966.) *Honig* does not help A.N. because we have reached a different conclusion with regard to the presence of prejudice.[3] As noted above, A.N.'s case involves bringing in new parties, not adding claims against a party already defending an action.

All factors considered, we cannot say the trial court acted arbitrarily or beyond the bounds of reason by granting the Doe Defendants' motion. On the contrary, the trial judge had a real and commonsense basis for being "very concerned" (the trial court's words) that the Doe Defendants were "brought into this spinning vortex shortly before trial."

---

[3] Division Five's opinion in *Honig, supra,* 6 Cal.App.4th 960, concluded with the following passage: "In finding that the amendment should have been allowed, we are well aware of the purposes behind fast track . . . . However, if an amendment is appropriate the trial court should continue the trial if necessary, even if the matter is on fast track." (*Id.* at p. 967.) This discussion is not relevant to A.N.'s case because his case does not implicate any "fast track" issues.

## DISPOSITION

The trial court's order dated October 22, 2007, is affirmed. Respondents are awarded costs on appeal.

Rubin, Acting P. J., and O'Neill, J.,* concurred.

A petition for a rehearing was denied April 6, 2009, and the opinion was modified to read as printed above.

---

*Judge of the Ventura Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.