Filed 4/8/15  Aguirre v. Larkin CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JENNIE AGUIRRE et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>JOHN LARKIN, AS CO-TRUSTEE OF THE RESIDUAL TRUST OF THE FRED R. RIPPY TRUST AND AS TRUSTEE OF THE QTIP TRUST OF THE FRED R. RIPPY TRUST,<br><br>Defendant and Respondent. | B253575<br><br>(Los Angeles County<br>Super. Ct. No. BC450023) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge.  Affirmed.

Park & Sylva, Daniel E. Park, Shahram Shayesteh, Christopher C. Cianci for Plaintiffs and Appellants.

Squire Patton Boggs, Chris M. Amantea, Adam R. Fox, Adrienne R. Salerno; Fuller & Fuller, Bruce Fuller and Kevin Heimler, for Defendant and Respondent.

## INTRODUCTION

Plaintiffs and appellants Jennie Aguirre, Glenn DiCaro, Judy Gilleland, Rosemary Islava, Aliyah Islava, Ruth Linnea Karmelich, and Olivia Santos (plaintiffs)[1] named defendant and respondent John Larkin, as Co-Trustee of the Residual Trust of the Fred R. Rippy Trust and as Trustee of the QTIP Trust of the Fred R. Rippy Trust (Larkin), as a Doe defendant in a lawsuit concerning the alleged illegal storage and dumping of chemicals on real property once owned by the Fred R. Rippy Trust.  The trial court sustained, without leave to amend, Larkin's demurrer to the fourth amended complaint on statute of limitations grounds, ruling that the Doe amendment did not relate back under Code of Civil Procedure section 474[2] to the original complaint's filing date and that Larkin had been prejudiced by plaintiffs' failure timely to serve him with a complaint. On appeal, plaintiffs contend that the trial court erred in ruling that their addition of Larkin through a Doe amendment did not relate back to the original complaint's filing date; if the relation back doctrine did not apply, then they sufficiently alleged late discovery; and the trial court abused its discretion in denying them leave to amend.  We affirm.

## BACKGROUND

On November 24, 2010, plaintiffs brought an action for negligence, strict liability, public nuisance, negligence per se, strict liability for ultrahazardous activities, and loss of consortium against Omega Chemical Corporation (Omega); Omega Chemical PRP Group, LLC; Omega Recovery Services Corporation; Tri-Cities Regional Occupational Program; Vanowen Holdings, Inc.; and Fred R. Rippy, Inc. alleging that Omega illegally stored and dumped chemicals on two parcels of land leased from Fred R. Rippy, Inc.—

---

[1]     We omit other plaintiffs to the original complaint who were not plaintiffs in the fourth amended complaint—the operative pleading on appeal—and are not parties to this appeal.

[2]     All statutory citations are to the Code of Civil Procedure unless otherwise noted.

12504 and 12512 Whittier Boulevard in the City of Whittier, California—that later became known as the Omega Chemical Superfund Site (Omega Site). Except for Aliyah Islava, plaintiffs alleged that they worked at the Tri-Cities Regional Occupational Program (ROP), which occupied property (ROP Site) that was located across the street from the Omega Site and that they were exposed to chemicals that migrated from the Omega Site to the ROP Site.[3] Plaintiffs alleged that they suffered a variety of illnesses due to their chemical exposure.

On May 13, 2011, plaintiffs filed a second amended complaint. On June 26, 2012, plaintiffs filed three Doe amendments to the second amended complaint including an amendment identifying the Fred R. Rippy Trust as "Doe 3." Larkin and Sarah Rippy (Rippy), as Co-Trustees of the Residual Trust of the Fred R. Rippy Trust,[4] demurred to the second amended complaint. Larkin, as Trustee of the QTIP Trust of the Fred R. Rippy Trust, filed a joinder in that demurrer. In their demurrer, Larkin and Rippy argued that the second amended complaint was barred by the statute of limitations, failed to allege facts sufficient to state a cause of action against the Fred R. Rippy Trust, and was uncertain as to the Fred R. Rippy Trust because a trust is not a legal entity that can sue or be sued. The trial court sustained the demurrer with leave to amend.

On November 15, 2012, plaintiffs filed their third amended complaint naming Larkin as "an individual on behalf of the FRED R. RIPPY TRUST." Plaintiffs continued to name the Fred R. Rippy Trust as a defendant and asserted its liability through its trustees and their conduct.[5] In their third amended complaint, plaintiffs asserted causes

---

[3]     Plaintiffs alleged that Aliyah Islava was Rosemary Islava's daughter and in gestation when her mother worked at the ROP Site.

[4]     In plaintiffs' fourth amended complaint, they alleged that at some point after 1987, the Fred R. Rippy Trust was divided into a Residual Trust and a QTIP Trust.

[5]     The third amended complaint identified as trustees Paul Hendricks, Wayne Harvey, Lind Coop, Daniel Stubbs, and Rippy. In her demurrer to the fourth amended complaint, Rippy states that Hendricks, Harvey, Coop, and Stubbs, who were not named

3

of action for negligence, absolute liability for ultrahazardous activity, and public nuisance. Larkin, as Trustee of the QTIP Trust of the Fred R. Rippy Trust and Co-Trustee of the Residual Trust of the Fred R. Rippy Trust (sometimes referred to as the Fred R. Rippy Trust), demurred to the third amended complaint. In his demurrer, Larkin argued that the third amended complaint was barred by the statute of limitations, failed to allege facts sufficient to state a cause of action against Larkin or the Fred R. Rippy Trust, was uncertain as to Larkin because it named him individually and not in his representative capacity as a trustee, and was uncertain as to the Fred R. Rippy Trust because a trust is not a legal entity that can sue or be sued.

Rippy, as Co-Trustee of the Residual Trust of the Fred R. Rippy Trust and as an individual on behalf of the Fred R. Rippy Trust, also demurred to the third amended complaint. She argued that the causes of action in the third amended complaint were uncertain as to the Fred R. Rippy Trust because a trust is not a legal entity that can sue or be sued, were barred by the statute of limitations and the relation back doctrine did not apply, were barred by laches because plaintiffs' unreasonable delay in naming the Fred R. Rippy Trust prejudiced the trust, and failed to alleged facts sufficient to state a cause of action.

The trial court sustained the demurrers with leave to amend. The trial court ruled that plaintiffs failed to plead facts showing delayed discovery—i.e., facts that would bring their filing of the Doe amendment within the two year statute of limitations, and that the trustees were improperly named as individuals on behalf of the trust rather than as trustees. Plaintiffs' counsel "acknowledge[d] misnaming or mislabeling" and stated that plaintiffs would clarify the late discovery issue in a fourth amended complaint.

On July 3, 2013, plaintiffs filed their fourth amended complaint. Among others, plaintiffs named as defendants the Fred R. Rippy Trust, Larkin as Trustee of the QTIP Trust of the Fred R. Rippy Trust and Co-Trustee of the Residual Trust of the Fred R. Rippy Trust, and Rippy as Co-Trustee of the Residual Trust of the Fred R. Rippy Trust.

as defendants in the fourth amended complaint, were dismissed before plaintiffs filed their fourth amended complaint

4

Plaintiffs alleged that the claims against the Fred R. Rippy Trust in the Fourth Amended Complaint were brought through the naming of current trustees Larkin and Rippy. Plaintiffs further alleged that for some period in 1986 and 1987, the Fred R. Rippy Trust owned both parcels of land that constituted the Omega Site.[6] They asserted that they learned of contamination at the ROP Site from a May 28, 2010, newspaper article. It was not until about June 2011, however, that they learned about the Fred R. Rippy Trust's involvement in the contamination—i.e., they learned that the trust knew as early as 1988 that the Omega Site was contaminated but failed to comply with its duties as a property owner to prevent or warn of the hazards on its property. Plaintiffs alleged that they could not have learned sooner of the trust's involvement despite reasonable diligence.

Larkin demurred to the fourth amended complaint. In his demurrer, Larkin argued that the fourth amended complaint was barred by the statute of limitations, failed to alleged facts sufficient to state a cause of action, and was uncertain.

Rippy also demurred to the fourth amended complaint. In her demurrer, among other arguments, she argued that the fourth amended complaint was barred by laches because plaintiffs' unreasonable delay in serving her as a Doe defendant after ascertaining her identity prejudiced her—i.e., prejudiced the Fred R. Rippy Trust. She argued, in part, that plaintiffs admitted that they knew of the identity and involvement of the Fred R. Rippy Trust in this matter in June 2011. The Fred R. Rippy Trust—which was named as Doe 3 on June 26, 2012—was brought into the case 12 months after plaintiffs admitted they knew of its identity and involvement in this matter. She claimed prejudice because, by the time the Fred R. Rippy Trust was named as Doe 3 and she was subsequently named by amendment, 70 depositions had been taken without the trust's or her participation and she would have to retake many of those depositions. Also, because other defendants had settled with plaintiffs for $1.75 million and the settlement was the

---

[6] Plaintiffs alleged that Fred Rippy transferred ownership of the 12504 Whittier Boulevard parcel to the Fred R. Rippy Trust in 1986 and Francine Rippy transferred ownership of the 12512 parcel to the Fred R. Rippy Trust in 1987. In 1987, Omega became the owner of both parcels.

5

subject of a contested motion for good faith settlement that was granted, Rippy was precluded from seeking indemnity on behalf of the trust from any of the settling defendants. In connection with her reply brief, Rippy submitted a declaration from her attorney who stated that more than 60 depositions had been taken before Rippy was added as defendant—i.e., through the Doe amendment naming the Fred R. Rippy Trust and subsequent amendments naming Rippy in her representative capacity as a Co-Trustee of the Residual Trust of the Fred R. Rippy Trust—and that Rippy would have to re-depose many of the deponents.

The trial court sustained the demurrers to the fourth amended complaint without leave to amend. In ruling on Rippy's demurrer, it stated that it was undisputed that plaintiffs knew, on May 28, 2010, that they were potentially injured and the cause of that injury. It also was undisputed that Rippy was a record owner of the two parcels that constituted the Omega Site. Plaintiffs' original complaint named other owners of the two parcels. Plaintiffs thus were on inquiry notice as to the identities of all record owners. The trial court ruled that the Doe amendment as to Rippy did not relate back to the original complaint because plaintiffs were not genuinely ignorant of Rippy's identity when they filed their original complaint and Rippy had been prejudiced by plaintiffs' delay in filing the Doe amendment because she was unable to participate in 62 depositions and was unable to seek indemnity from other defendants whose settlement with plaintiffs had been the subject of a motion for good faith settlement that the trial court granted. Accordingly, the trial court ruled, plaintiffs' claims against Rippy were barred by the statute of limitations.

In sustaining Larkin's demurrer, the trial court adopted its ruling sustaining Rippy's demurrer. The trial court ruled that plaintiffs had to bring an action naming those defendants discoverable through examination of public records within the two-year statute of limitations in section 340.8. It also ruled that the facts did not support the application of the relation-back doctrine with respect to Larkin and that Larkin was prejudiced by late service of the fourth amended complaint.

6

**DISCUSSION**

## I. Standard of Review

"The application of the statute of limitations on undisputed facts is a purely legal question." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.) Accordingly, we review de novo an order sustaining a demurrer on statute of limitations grounds. (*Ibid.*) In that review, we take as true the facts alleged in the complaint and determine whether those facts establish that the claim is barred as a matter of law. (*Ibid.*) We review a trial court's decision to not grant leave to amend a complaint for an abuse of discretion. (*Los Angeles Memorial Coliseum Com. v. Insomniac, Inc.* (2015) 233 Cal.App.4th 803, 819.) A trial court abuses its discretion when there is a reasonable possibility that the defect can be cured by amendment. (*Ibid.*)

## II. Relation Back Under Section 474

Plaintiffs contend that the trial court erred in finding that their action against Larkin was barred by the statute of limitations. They contend that the June 26, 2012, Doe amendment naming the Fred R. Rippy Trust (and, ultimately, Larkin in his representative capacity as trustee and co-trustee of the successor trusts) as a defendant related back to the November 24, 2010, filing of their original complaint under section 474.[7] Plaintiffs argue that their action against Larkin was timely because the November 24, 2010, filing date was within two years[8] of their discovery of contamination on May 28, 2010.

---

[7] Section 474 provides, in relevant part: "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, or the affidavit if the action is commenced by affidavit, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly . . . ."

[8] Section 340.8, subdivision (a), the applicable statute of limitations, provides: "In any civil action for injury or illness based upon exposure to a hazardous material or toxic substance, the time for commencement of the action shall be no later than either two years from the date of injury, or two years after the plaintiff becomes aware of, or reasonably should have become aware of, (1) an injury, (2) the physical cause of the

Because, however, plaintiffs delayed approximately one year before naming Larkin as a defendant after they discovered the Fred R. Rippy Trust's potential liability in June 2011 and Larkin was prejudiced by that delay, plaintiffs could not avail themselves of the relation back doctrine in section 474. Accordingly, plaintiffs' June 26, 2012, Doe amendment was barred by the statute of limitations in section 340.8 because it was filed over two years after plaintiffs discovered contamination on May 28, 2010.

Generally, an amended complaint that adds a new defendant does not relate back to the original complaint's filing date and the statute of limitations applies as of the amended complaint's filing date and not the date the original complaint was filed. (*Woo v. Superior Court* (1999) 75 Cal.App.4th 169, 176.) There is an exception to that general rule when, under section 474, a new defendant is substituted for a fictitious Doe defendant named in the original complaint. (*Ibid.*) If section 474's requirements are satisfied, an amended complaint substituting a new defendant for a Doe defendant is deemed filed on the date the original complaint was filed for statute of limitations purposes. (*Ibid.*; *Austin v. Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596, 602 ["a defendant sued by a fictitious name and later brought into the case by an amendment substituting his true name is considered a party to the action from its commencement for purposes of the statute of limitations"].)

For section 474 to apply and the filing of an amended complaint to relate back to the filing date of the original complaint, the plaintiff must be ignorant of the fictitiously named defendant's name or identity at the time the original complaint was filed. (*Hazel v. Hewlett* (1988) 201 Cal.App.3d 1458, 1464.) Such ignorance "'includes situations where the plaintiff "'knew the identity of the person but was ignorant of the facts giving him a cause of action against the person [citations], or knew the name and all the facts but was unaware that the law gave him a cause of action against the fictitiously named defendant and discovered that right by reason of decisions rendered after the commencement of the action. [Citation.]'" [Citations.]" (*Ibid.*)

injury, and (3) sufficient facts to put a reasonable person on inquiry notice that the injury was caused or contributed to by the wrongful act of another, whichever occurs later."

8

Under section 474, a plaintiff does not have to exercise reasonable diligence during the period after the complaint was filed up to the expiration of the statute of limitations to discover the identity of a fictitious defendant or the facts supporting a cause of action. (*Streicher v. Tommy's Electric Co.* (1985) 164 Cal.App.3d 876, 883.) Similarly, a plaintiff may avail himself of section 474's relation-back doctrine even if the plaintiff's ignorance of the defendant's identity resulted from the plaintiff's negligence. (*Woo v. Superior Court, supra,* 75 Cal.App.4th at p. 177.) When, however, a plaintiff satisfies section 474's requirements, an amendment substituting a named defendant in place of a fictitious one will not relate back to the original complaint's filing date if the plaintiff unreasonably delayed in filing the Doe amendment after learning of the newly named defendant's identity and the newly named defendant can show actual prejudice caused by the delay. (*Hazel v. Hewlett, supra,* 201 Cal.App.3d at p. 1466; see *A.N. v. County of Los Angeles* (2009) 171 Cal.App.4th 1058, 1066, quoting *Barrows v. American Motors Corp.* (1983) 144 Cal.App.3d 1, 9; *Okoro v. City of Oakland* (2006) 142 Cal.App.4th 306, 313-314 ["The relation-back doctrine can be defeated if the defendant shows that the plaintiff 'was dilatory in amending his complaint, or that defendant suffered prejudice from any such delay.' [Citations.]"].)

In this case, even if plaintiffs could satisfy section 474's requirements—i.e., show that they were ignorant of the Fred R. Rippy Trust's name or identity, their June 26, 2012, Doe amendment does not relate back to the filing of their original complaint on November 24, 2010, because, as the fourth amended complaint shows, they delayed in filing their Doe amendment for one year after they learned of the trust's potential liability and Larkin suffered prejudice as a result. (*Hazel v. Hewlett, supra,* 201 Cal.App.3d at p. 1466; *Okoro v. City of Oakland, supra,* 142 Cal.App.4th at pp. 313-314.) With her reply brief in support of her demurrer to the fourth amended complaint, Rippy submitted a declaration from her attorney in which the attorney stated that more than 60 depositions had been taken before Rippy was added as a defendant and that Rippy would have to re-depose many of the deponents. Plaintiffs did not file a written objection to the declaration, but objected orally at the demurrer hearing that the admission of the

9

declaration would violate their due process rights. The trial court did not rule on the objection. In its ruling on Rippy's demurrer, the trial court found that Rippy was prejudiced by her inability to participate in those depositions. Based on the evidence that more than 60 depositions had been taken before the Doe amendment adding the Fred R. Rippy Trust, the trial court found that Larkin also was prejudiced by his inability to participate in the depositions.

The inability to participate in the depositions was prejudicial. At a minimum, the depositions could have led to evidence relevant to a defense that non-economic damages, if any, should be allocated among the various defendants. (Civ. Code, § 1431.2, subd. (a) ["In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount"]; *Wilson v. Ritto* (2003) 105 Cal.App.4th 361, 367 ["In determining a defendant's share of fault, the court may consider other joint tortfeasors' degree of fault for the plaintiff's injuries and reduce the defendant's share accordingly"].)

Plaintiffs rely on *A.N. v. County of Los Angeles, supra,* 171 Cal.App.4th at page 1067 which held that a "defendant named in an action by a Doe amendment under section 474 may challenge the amendment by way of an evidence-based motion, which argues that the plaintiff 'unreasonabl[y] delayed' his or her filing of the challenged amendment," for the proposition that such a defendant *must* challenge the amendment through an evidence-based motion. Plaintiffs argue that Larkin did not bring such a motion and failed to show or even attempt to show or argue that plaintiffs were dilatory or that Larkin suffered prejudice from any such delay. Concerning the hardship of re-deposing witnesses, plaintiffs state that Rippy, and not Larkin raised the prejudice issue. They argue that Rippy's submission of her attorney's declaration was untimely because it was filed with her reply brief in support of her demurrer and not earlier with the demurrer itself. They contend that the trial court should not have considered such late evidence.

10

Moreover, even if the trial court properly considered such evidence as to Rippy, plaintiffs claim, it had no bearing on whether Larkin suffered prejudice.

Plaintiffs' arguments are unavailing. *A.N. v. County of Los Angeles, supra,* 171 Cal.App.4th at page 1067 holds that a defendant *may*, not *must*, challenge a Doe amendment through an "evidence-based motion." There is no legal or logical reason why evidence of prejudice from a delayed Doe amendment may not be considered in connection with a demurrer. As for the admissibility of the declaration from Rippy's attorney concerning prejudice, although plaintiffs objected orally at the demurrer hearing that the admission of the declaration would violate their due process rights, they forfeited review of the issue by failing to press the trial court for a ruling. (*People v. Hayes* (1990) 52 Cal.3d 577, 619 ["a party objecting to the admission of evidence must press for an actual ruling or the point is not preserved for appeal"].)

Even if there were no forfeiture, the trial court could consider the declaration. In *Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, the plaintiffs brought an action against an automobile service company for failure to pay for defects in an automobile. Several years later, plaintiffs filed an amendment to the complaint substituting another party in the place of a fictitiously named defendant. That defendant demurred, asserting that the action was barred by the statute of limitations because plaintiffs knew the identity of the defendant when the original complaint was filed and therefore could not claim the relation-back benefit of the fictitious name statute. In support of the demurrer, the defendant relied on a document attached to the complaint and on a declaration its attorney submitted that included pages of a deposition. Defendant did not make a request for judicial notice of this material.

The court noted that plaintiffs did not raise the lack of a request for judicial notice. The court stated that taking judicial notice of a document is not the same as accepting the truth of its content and that a demurrer is limited to testing the legal sufficiency of the complaint. The court observed that various approaches could be taken, but concluded that judicially noticed matters can be dispositive on a demurrer "'only in those instances

11

where there is not or cannot be a factual dispute concerning that which is sought to be judicially noticed.'" (*Joslin v. H.A.S. Ins. Brokerage, supra,* 184 Cal.App.3d at p. 375.)[9]

In this case, the attorney declaration submitted with the Rippy's demurrer concerned a claim of prejudice based on Rippy's inability to participate in discovery. The declaration asserted that over 60 depositions had been taken in which Rippy had been unable to participate. At the demurrer hearing, plaintiffs did not dispute that over 60 depositions had been taken in which Rippy had been unable to participate before the Fred R. Rippy Trust was added by Doe amendment. That these depositions had taken place is not in dispute. On appeal, plaintiffs contend that fewer than 60 declarations were taken during the one year that they delayed naming the Fred R. Rippy Trust as a Doe defendant, but concede that a significant number of depositions were taken during that period. Accordingly, the trial court could rely upon the declaration at the demurrer stage. (*Joslin v. H.A.S. Ins. Brokerage, supra,* 184 Cal.App.3d at p. 375 [matters can be dispositive on a demurrer "only in those instances where there is not . . . a factual dispute concerning that which is sought to be judicially noticed"].)

Moreover, notwithstanding Rippy's submission of her attorney's declaration in connection with her reply brief and not sooner in connection with her demurrer, she contended in her demurrer that she had been unable to participate in 70 depositions. Thus, plaintiffs were on notice of Rippy's prejudice contention and, as discussed above, did not argue in the trial court that there were not a substantial number of depositions— whether 62 or 70—that had been taken in which Rippy had been unable to participate. Moreover, plaintiffs did not ask for a continuance to present evidence that Rippy did not suffer prejudice because she was unable to participate in the depositions. Because evidence that showed that over 60 depositions had been taken before the Fred R. Rippy

---

[9]     The court said that the relevant facts in that case were not disputed. The court concluded that in that case the material did not establish defendant's involvement in the denial of the claim when the complaint was filed, and therefore, plaintiff's ignorance of the true name of the Doe defendant "has not been conclusively shown to be false or sham." (*Joslin v. H.A.S. Ins. Brokerage, supra,* 184 Cal.App.3d at p. 377.)

12

Trust was added by Doe amendment was properly before the trial court, the trial court properly considered it in ruling on Larkin's demurrer.

## III. Delayed Discovery

Plaintiffs argue that even if their Doe amendment adding the Fred R. Rippy Trust does not relate back to the filing date of their original complaint, the trial court erred in ruling that they failed in their fourth amended complaint to allege properly late discovery of the trust's alleged wrongdoing. They contend that the trial court improperly focused on whether plaintiffs should have known that the Fred R. Rippy Trust was on title to the Omega Site without also considering whether they should have discovered facts establishing a basis for the trust's liability. The trial court did not err.

As set forth above, section 340.8, subdivision (a) sets forth the two-year statute of limitations for toxic torts. It provides: "In any civil action for injury or illness based upon exposure to a hazardous material or toxic substance, the time for commencement of the action shall be no later than either two years from the date of injury, or two years after the plaintiff becomes aware of, or reasonably should have become aware of, (1) an injury, (2) the physical cause of the injury, and (3) sufficient facts to put a reasonable person on inquiry notice that the injury was caused or contributed to by the wrongful act of another, whichever occurs later."

The "discovery rule" is an "important exception" to the general rule that "a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'" (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806-807.) The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. [Citation.]" (*Id.* at p. 807.)

"In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' [Citation.] In assessing the sufficiency of the allegations of

13

delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.' [Citation.] [¶] Simply put, in order to employ the discovery rule to delay accrual of a cause of action, a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light. In order to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." (*Fox v. Ethicon Endo-Surgery, Inc., supra,* 35 Cal.4th at pp. 808-809.)

In their fourth amended complaint, plaintiffs alleged that the Fred R. Rippy Trust's liability depended on the trust's failure as an owner of the Omega Site to comply with its duties to prevent and/or warn about hazards on its property. Therefore, they contended, discovery of four internal investigative reports concerning contamination at the Omega Site (three of which were initiated and funded by the Fred R. Rippy Trust) that were produced in formal discovery by Omega and Fred R. Rippy, Inc. in this action was "necessary and important and could not have occurred earlier despite reasonable diligence." They claimed that the reports were issued to Omega and/or the Fred R. Rippy Trust and thus were not readily accessible to the public. They alleged that they could not have determined the trust's liability without the reports and the reports were, and only could have been, obtained in response to plaintiffs' formal discovery requests.

Plaintiffs' claim that they could only have obtained knowledge of the Fred R. Rippy Trust's alleged wrongdoing through the four reports produced in formal discovery and that they only could have obtained those reports in formal discovery is a "conclusory allegation [that] will not withstand demurrer." (*Fox v. Ethicon Endo-Surgery, Inc., supra,* 35 Cal.4th at p. 808.) Plaintiffs were required to show that they were unable to have discovered the alleged wrongdoing despite reasonable diligence. (*Ibid.*) Once

14

plaintiffs were on notice of their potential injuries, they were required to "conduct a reasonable investigation of all potential causes of that injury." (*Ibid.*) The trial court found that it was undisputed that Rippy—i.e., the Fred R. Rippy Trust—was a record owner of the two parcels that constituted the Omega Site and plaintiffs, in their original complaint, named as defendants other owners of the Omega Site. Thus, plaintiffs were on notice to conduct an investigation to determine if the Fred R. Rippy Trust, as an owner of the Omega Site, played a role in their injuries. (*Ibid.*)

Plaintiffs did not describe in their fourth amended complaint any efforts they took to try to determine if the Fred R. Rippy Trust was responsible for the contamination at the Omega Site. Instead, they offered an explanation as to why they did not try to determine that alleged responsibility. Specifically, they alleged that "[b]ecause of the in-depth nature of the historical research required to determine the liability of the [Fred R.] Rippy Trust and due to the fact that Plaintiffs' primary research concerned the immediate issue of contamination of the building in which they worked or had worked, as well as involved the, at-the-time, known and current parties responsible for said urgent threat, it is not and would not have been reasonable for Plaintiffs to have undertaken such historical, involved, in-depth efforts as alleged herein until such time that they did, following the hiring of attorneys, the initiation of the lawsuit in November 24, 2010, and the receipt of the above-mentioned documents from formal discovery." That is, plaintiffs explained that they did not conduct a reasonable investigation to determine if the Fred R. Rippy Trust was responsible for their injuries because they believed that their efforts were better focused elsewhere. Accordingly, the trial court did not err in finding that they failed in their fourth amended complaint to allege properly late discovery of the trust's alleged wrongdoing. (*Fox v. Ethicon Endo-Surgery, Inc., supra,* 35 Cal.4th at pp. 808-809.) Thus, as the claim otherwise did not relate back to the filing of the original complaint, the claim was untimely.

15

## IV.    Leave to Amend

Plaintiffs contend that the trial court abused its discretion in denying them leave to amend to try to allege facts that would establish that they timely brought their claims against Larkin.  The trial court did not abuse its discretion.

Plaintiffs contend that amendments in their fifth amended complaint against the remaining defendants explain why they were "genuinely unaware" of the identity of the Fred R. Rippy Trust as a prior owner of the Omega Site and why they did not bring the trust into the case until June 2012.  The fifth amended complaint alleged that "prior to and at the time when the initial Complaint was filed in this case, on or about November 24, 2010, Plaintiffs were genuinely unaware of the [Fred R.] Rippy Trust, its prior ownership of the Omega Site properties, and the facts supporting liability against the [Fred R.] Rippy Trust.  In drafting the initial Complaint during this time, primary reliance was given to the public history of the Omega Site released by the EPA.  In its public history, even the EPA makes no mention of the ownership of the [Fred R.] Rippy Trust or the investigations conducted by it in the late 1980s.  In its Record of Decision of Operable Unit 1, for the Omega Site, the EPA, in fact, incorrectly states that:  [']Fred R. Rippy, Inc. purchased the parcel at 12504 Whittier Boulevard in 1963 and sold it to Omega in 1987. . . . [As for the parcel at 12512 Whittier Boulevard, i]n 1984, the property was purchased by Fred R. Rippy, Inc., who sold it to Omega in 1987.[']  It is alleged herein that this history by the EPA was determined not to be true by Plaintiffs, in part, after they received the below-described documents [(the four internal investigative reports concerning contamination at the Omega Site that plaintiffs obtained through discovery)] in or around June 2011, and, in part, after, in its Motion for Summary Judgment filed in June 2012, Rippy Inc. stated (contrary to the EPA's history) that it was not the property owner of the Omega Site parcels during all of times described, but only as correctly alleged in this version of the Complaint.  Plaintiffs, however, at the time of drafting their initial Complaint, should have had no reason to doubt the accuracy of the public information provided by the EPA, and to determine that Plaintiffs should have

16

verified the EPA's own information places not only an unreasonable burden, but a potentially impossible burden, on them at the pleading stage."

Plaintiffs' fifth amended complaint suffers from the same infirmity as their fourth amended complaint. That is, it was undisputed that the Fred R. Rippy Trust was a record owner of the two parcels that constituted the Omega Site and plaintiffs failed to allege that they conducted a reasonable investigation—i.e., one that included an investigation of the Fred R. Rippy Trust as a record owner of the Omega Site, to determine if the Fred R. Rippy Trust was responsible for their injuries. (*Fox v. Ethicon Endo-Surgery, Inc., supra,* 35 Cal.4th at pp. 808-809.) Accordingly, because there is not a reasonable possibility that the defect in plaintiffs' fourth amended complaint can be cured by amendment, the trial court did not abuse its discretion in denying plaintiffs leave to amend. (*Los Angeles Memorial Coliseum Com. v. Insomniac, Inc., supra,* 233 Cal.App.4th at p. 819.)

## DISPOSITION

The judgment is affirmed.  Larkin is awarded his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.


We concur:


TURNER, P. J.


GOODMAN, J.*

---

\*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.