Filed 8/24/23  Armstrong v. Wudue CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| OLIVER ARMSTRONG,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>SHUMET WUDUE,<br><br>        Defendant and Respondent. | A165634<br><br>(City and County of San<br>  Francisco Super. Ct.<br>  No. CGC-19-576657) |

Plaintiff and appellant Oliver Armstrong (plaintiff) appeals from the trial court's judgment dismissing defendant and respondent Shumet Wudue (defendant) following the grant of defendant's motion to strike substitution of defendant's name for a Doe defendant.  We reverse.

BACKGROUND

According to the allegations in plaintiff's complaint, he suffered a serious head injury during a robbery in the Mission neighborhood of San Francisco in July 2018.  Before the robbery, he was left in a dangerous area at night by a taxi cab driver who demanded money in excess of the regular fare to drive plaintiff home to Berkeley.  Shortly thereafter, he was attacked and robbed.

1

Plaintiff reported the incident to the San Francisco Police Department (SFPD). On August 8, 2018, an SFPD sergeant sent plaintiff an e-mail attaching a blurry image of plaintiff and stating, "Can you confirm if this is you?" The SFPD's investigation log states, "Sent victim an image of him getting [out] of the cab. Victim confirmed it was him." The photograph displays plaintiff but not the taxi in which plaintiff was a passenger.

In June 2019, plaintiff filed the present action against Flywheel Taxi, DeSoto Cab Company, Inc., and Does 1-20. Plaintiff alleged causes of action for negligence, false imprisonment, conversion, and intentional misrepresentation/fraud. Plaintiff later dismissed Flywheel and DeSoto from the case.

In March 2020, plaintiff subpoenaed the SFPD, requesting documents and videos related to the investigation of the July 2018 assault and robbery. The SFPD certified no records were available and, in response to subsequent efforts by plaintiff, produced only some photographs.

In November 2020, plaintiff filed an amendment substituting Big Dog City Corporation dba Yellow Cab of San Francisco (Yellow Cab) for one of the Doe defendants.[1] In August 2021, Yellow Cab responded to a special interrogatory asking it to "identify the drivers of any and all of DEFENDANTS' cabs that picked up any fares" from specific GPS coordinates on July 18, 2018 between 12:01 a.m. and 2:30 a.m. According to plaintiff, the coordinates are where plaintiff was picked up the night of the robbery. Yellow Cab responded, "None within stated parameters. Within a roughly one block radius: Ramon Lomibao[,] David Nguyen, and Shumet Wudue." When asked for the name of the person who holds the medallion for the taxi

---

[1] Plaintiff also named an individual as a defendant, but that individual was subsequently dismissed.

that picked up plaintiff, Yellow Cab responded, "Responding party has no information from which it might formulate an answer to this interrogatory."

A dispatch log produced by Yellow Cab in October 2021 provided cab numbers for various drivers, including defendant, whose cab number was identified as number 525. That cab does not appear on the San Francisco Municipal Transportation Agency's (SFMTA) spreadsheet of taxi rides the evening of the incident.

In a November 2021 deposition of an SFPD officer, the deponent suggested plaintiff might contact the SFPD's Southern Station to obtain more records. In March 2022, plaintiff again subpoenaed the SFPD, requesting, among other things, all "photographs and video" gathered in investigating the 2018 assault and robbery. On April 12, 2022, plaintiff received a number of videos and records from the SFPD. One video shows plaintiff exiting Yellow Cab number 525. Both plaintiff and his counsel averred that April 2022 was the first time they saw an image of plaintiff exiting that cab.

The next day, April 13, 2022, plaintiff submitted to the court an amendment to the complaint substituting defendant Wudue, driver of cab number 525, for one of the Doe defendants (Doe Substitution). The trial court accepted the amendment on April 15 and the court filed it on April 20.

On April 21, 2022, plaintiff requested a trial continuance by stipulation with defendant Yellow Cab. The Presiding Judge of the trial court granted continuance of the trial to August 29. The order stated, "No further continuances" and "This is the last continuance."

Defendant was served with the lawsuit on April 27, 2022; his attorney had been provided the Doe Substitution two weeks before.

In June 2022, defendant moved to strike the Doe Substitution. Defendant argued plaintiff unreasonably delayed naming him, and that he

3

suffered prejudice from the delay because the Presiding Judge stated there would be no further continuances. The motion asserted appellant received an image showing cab number 525 from the SFPD in August 2018, and included a screenshot from a video showing the cab number. In a declaration that accompanied the motion, defendant's counsel explained he had created the "screen capture" from a video produced by the SFPD in 2022. The declaration stated, "I do not represent that the screen capture is identical to the one sent to [plaintiff] . . . . However, I have viewed the entire video – also produced by the SFPD – and can represent to the court that the taxi is in a station[a]ry position when [plaintiff] gets out of the vehicle and the unit number would be visible on any possible screen capture from the video which depicted him getting out of the cab."

Plaintiff opposed the motion to strike, arguing he was ignorant of defendant's involvement until April 2022, and providing evidence the screenshot he received in 2018 did not include an image of cab number 525. Plaintiff specifically averred in his declaration that he did not know the number of the cab that picked him up until he saw the video produced by the SFPD in April 2022. Plaintiff also argued he was diligent in trying to identify defendant and accommodating in arranging discovery with defendant. Plaintiff argued a trial continuance would be appropriate to address any concerns about fairness to defendant.

Following receipt of defendant's reply and a hearing, the trial court granted the motion to strike. The court's July 2022 order stated, "[Defendant's] identity has long been available to plaintiff through videos and Yellow Cab records. As early as August 2018, police reported that they '[s]ent victim [plaintiff] an image of him getting out of the cab. Victim confirmed it was him.' Whether [defendant's] cab number, 525, was visible is disputed. In

4

any event, it is undisputed that, in August 2021, Yellow Cab discovery responses named [defendant] as one of three cab drivers in the relevant area and provided a dispatch log stating [defendant's] name and cab number. Prejudice to Wudue is obvious. Trial is next month and discovery is closed."

On July 5, 2022, the trial court issued a judgment dismissing defendant. The present appeal followed. The court vacated the August trial date due to the pendency of the present appeal.

## DISCUSSION

Code of Civil Procedure section 474[2] "allows a plaintiff who is ignorant of a defendant's identity to commence suit—before the statute of limitations runs—by using a fictitious name for that defendant and then amending her complaint when the defendant's true name is discovered. [Citations.] If the statute's requirements are satisfied, the amendment relates back and the substituted defendant is considered to have been a party from the action's start." (*Hahn v. New York Air Brake LLC* (2022) 77 Cal.App.5th 895, 897–898 (*Hahn*).)

In determining whether substituting a named defendant for a Doe defendant is proper, "The test is whether, at the time the complaint was filed, the plaintiff ' "was ignorant of the facts giving [her] a cause of action against the person." ' [Citation.] The focus is on the *facts* that the plaintiff knew, not on whether the plaintiff subjectively knew she had a cause of action based on those facts. [Citation.] While the plaintiff's ignorance must be genuine, and

---

[2] All undesignated statutory references are to the Code of Civil Procedure. Section 474 provides in part, "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, . . . and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly . . ."

5

the plaintiff cannot claim ignorance simply because she did not know all the details of the person's involvement, the plaintiff is not barred from invoking section 474 merely because she suspected the person of wrongdoing based on an incomplete set of facts." (*Hahn, supra*, 77 Cal.App.5th at pp. 899–900; see also *Fuller v. Tucker* (2000) 84 Cal.App.4th 1163, 1172 (*Fuller*) [" '[s]ection 474 allows a plaintiff in good faith to delay suing particular persons as named defendants until [plaintiff] has knowledge of sufficient facts to cause a reasonable person to believe liability is probable' "].) The burden is on the defendant to prove the plaintiff "knew facts giving rise to a cause of action" against the defendant. (*Fuller*, at p. 1173.)

The issue in the present case is whether plaintiff should have named defendant when he learned defendant's name and the *possibility* that he drove the subject cab in late 2021, rather than whether plaintiff should have named defendant in the complaint in 2018. In these circumstances, the rule is that "unreasonable delay in filing an amendment after actually acquiring" knowledge of the identity of a person against whom the plaintiff has a claim "can bar a plaintiff's resort to the fictitious name procedure." (*Barrows v. American Motors Corp.* (1983) 144 Cal.App.3d 1, 8 (*Barrows*); accord *A.N. v. County of Los Angeles* (2009) 171 Cal.App.4th 1058, 1065–1067 (*A.N.*).) In order to prevail on a claim of unreasonable delay, a defendant must show "specific prejudice . . . from the delay between the [time the evidence was developed] and the filing of the amended complaint" substituting the defendant for a Doe defendant. (*Barrows*, at p. 10; accord *A.N.*, at pp. 1066–1067.)

Thus, defendant's challenge to the Doe Substitution is "an evidence-based motion, which argues that . . . plaintiff 'unreasonable delayed' his . . . filing." (*A.N., supra*, 171 Cal.App.4th at p. 1067.) We review the trial court's

6

ruling for an abuse of discretion. (*Ibid.*) "A trial court abuses its discretion when it relies on improper criteria" or if it "relies on a fact wholly unsupported by the evidence." (*Waterwood Enterprises, LLC v. City of Long Beach* (2020) 58 Cal.App.5th 955, 966.)

In the present case, defendant argues plaintiff was "aware of [defendant's] identity and the facts giving rise to a cause of action against [defendant] at least *six to eight months* before [plaintiff] filed the April 2022 Doe amendment, if not years earlier."[3] The argument fails. First, contrary to defendant's and the trial court's assertions, there is *no* evidentiary dispute whether the image plaintiff received from the SFPD in 2018 showed defendant's cab number. Plaintiff presented to the court the *actual* image he received; defendant does not dispute the image's authenticity. The screen capture presented to the court by defendant's counsel in 2022 lacked any evidentiary value because there was no basis to find it showed what plaintiff saw in 2018—indeed, defense counsel admitted he could not so represent. Accordingly, the evidence conclusively shows plaintiff had no knowledge of defendant's involvement in 2018.

Second, defendant fails to explain why plaintiff's knowledge in 2021 that defendant was *one of three* drivers who *might* have picked plaintiff up the night of the robbery was sufficient to state a cause of action against defendant.[4] This court's decision in *Hahn, supra,* 77 Cal.App.5th 895, an

---

[3] Defendant thereby concedes the same standard of knowledge applies when substituting a named defendant for a Doe defendant as when naming a Doe defendant in the first place. That is, defendant admits plaintiff was only required to file the Doe Substitution when plaintiff "[knew] enough facts to state a cause of action." (*Hahn, supra,* 77 Cal.App.5th at p. 900.)

[4] It is unclear whether defendant even embraces such an argument. Instead, defendant asserts, "The trial court impliedly concluded that [plaintiff] knew who supposedly was responsible for his claims well before he

7

asbestos case, is contrary to any such argument. There, the decedent worked for the SFMTA and the plaintiffs knew prior to the complaint being filed that the light rail vehicles the decedent worked on were built by Boeing, that Air Brake designed and built the braking system, and a third company made the brake pads. (*Id.* at p. 898.) The plaintiffs sued Boeing and a number of Doe defendants, and substituted Air Brake for one of the Doe defendants when documents produced by Boeing showed Air Brake specified the use of asbestos in the brake pads. (*Ibid.*) Plaintiffs knew at the time the complaint was filed that Air Brake *might* have been responsible for the presence of asbestos, because "plaintiffs alleged that brake dust was the source of asbestos." (*Id.* at p. 901.) But that was not enough to preclude reliance on section 474 because, "for example, [it was possible] that Air Brake designed a system that specified non-asbestos brake pads, but Boeing opted to install asbestos brake pads instead." (*Ibid.*) It was proper for the plaintiffs to wait to name Air Brake "until they ha[d] a sufficient basis to allege that [Air Brake] manufactured or supplied" the asbestos to which the decedent was exposed. (*Id.* at p. 901.)

In the present case, plaintiff acted properly by waiting to name defendant until he had information showing a likelihood defendant was the actual driver of the subject cab. Plaintiff's knowledge that defendant was *one of three* cab drivers identified by Yellow Cab that picked up passengers in the relevant timeframe and area was not sufficient " 'to cause a reasonable person to believe' " *defendant's* " 'liability is probable.' " (*Fuller*, *supra*, 84 Cal.App.4th at p. 1172.) Based on the information possessed by plaintiff, it was equally probable any of the three were liable, assuming plaintiff was

filed the Doe amendment." As we have explained, there is no evidentiary support for any such implied finding.

8

picked up by a Yellow Cab driver at all.  (See *ibid.* ["the plaintiff does not relinquish her rights under section 474 simply because she has a suspicion of wrongdoing arising from one or more facts she does know"].)  *Hahn* observed, "If a reasonable diligence standard governed section 474, plaintiffs would be incentivized to routinely name any and all persons who might conceivably have some connection with the suit at the outset." (*Hahn*, *supra*, 77 Cal.App.5th at p. 900.)  A rule requiring a plaintiff to substitute a named defendant for a Doe defendant upon learning of the *possibility* of liability would create a similar problematic incentive.

Accordingly, the trial court's finding that appellant had a basis to name defendant in 2021 is entirely lacking evidentiary support; the *only* evidence is that plaintiff first learned of defendant's involvement when he received videos from the SFPD in April 2022.  And, relatedly, the court also erred in considering prejudice resulting from a delay in filing the Doe Substitution between October 2021 (when plaintiff learned defendant's cab number) and April 2022.  Instead, the only "delay" in the present case was the one-day period between receipt of the videos from the SFPD on April 12 and the filing of the Doe Substitution on April 13—if that can be considered any delay at all.  Defendant appropriately makes no attempt to argue that this one-day "delay" caused him any prejudice.  Because the undisputed record shows there was no "unreasonable delay" (*Barrows*, *supra*, 144 Cal.App.3d at p. 8) in the filing of the Doe Substitution, the trial court abused its discretion in granting defendant's motion to strike.[5]

---

[5] Defendant suggests plaintiff was not diligent in discovering defendant was the driver of the subject cab, but defendant also properly concedes "the relevant analysis here is not whether [plaintiff] was diligent." (*Hahn*, *supra*, 77 Cal.App.5th at p. 900 [section 474 imposes no "duty to exercise reasonable diligence"]; *Sobeck & Assocs., Inc. v. B & R Invs. No. 24* (1989) 215

DISPOSITION

The trial court's judgment is reversed and the matter is remanded for further proceedings consistent with this decision. Plaintiff is awarded his costs on appeal.

---

Cal.App.3d 861, 867 ["there is no requirement that the plaintiff exercise diligence to discover the identity of the defendant after filing the complaint"].) Defendant also suggests the motion to strike was appropriate because the Presiding Judge of the trial court had stated there would be no more trial continuances. But defendant cites no authority that was a proper basis to reject the Doe Substitution. The addition of a new party may be good cause for a continuance. (Cal. Rules of Court, rule 3.1332(c)(5); see also *Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389, 1395 ["When the two policies collide head-on, the strong public policy favoring disposition on the merits outweighs the competing policy favoring judicial efficiency."].)

Plaintiff asks this court to address evidentiary objections made below but not addressed by the trial court. It is unnecessary to address the objections to resolve the present appeal.

                                  _____

                                  Simons, J.

WE CONCUR:


_____

Jackson, P. J.


_____

Chou, J.


A165634