Filed 12/18/24  P. v. Johnson CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B331525 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A772024) |
| v. | |
| MICHAEL LAMONT JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Reversed with directions.

David R. Greifinger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri, Marc A. Kohm and Melanie Dorian, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1988, a jury convicted Michael Johnson of first degree murder and two counts of attempted murder. In 1990, Johnson pled guilty to another, unrelated first degree murder. Three decades later, Johnson filed a petition for resentencing under Penal Code section 1172.6 (former section 1170.95),[1] listing only his 1990 conviction by plea. However, thereafter, both Johnson and the People filed briefs exclusively addressing his 1988 jury convictions and failed to ever mention his 1990 conviction. The superior court denied the petition at the prima facie stage, finding him ineligible for relief as matter of law as to his 1988 jury conviction.

On appeal, Johnson contends (1) the superior court erred by failing to consider his petition as to his 1990 conviction; and (2) if a petition for his 1988 convictions "was properly before the court," the superior court erred in denying it at the prima facie stage because he could have been convicted under the natural and probable consequences doctrine. We agree with the People that Johnson forfeited his claim regarding his 1990 conviction. However, we construe his petition as challenging his 1988 convictions and agree with Johnson that the superior court erred in denying the petition without issuing an order to show cause. We reverse and remand for further proceedings where Johnson will have the opportunity to file a new petition or amend the existing petition to include his 1990 conviction.

---

[1] Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.) All undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *In 1988, a Jury Convicted Johnson of First Degree Murder and Attempted Murder*

On July 13, 1985, Christopher Wells was standing on the sidewalk in front of his house with a group of people.[2]  Yolanda Johnson (Yolanda)[3] and Consuelo Fisher were standing nearby. Two men, armed with revolvers, and Johnson, armed with a shotgun, approached Wells.  All three men fired in Wells's direction, killing Wells and wounding Yolanda and Fisher.

Wells had five bullet wounds in the back of his body from two different revolvers.  Fisher was wounded on her hip and left foot; each wound was caused by a different gun.  Yolanda was shot in her left eye.  A hat that Wells was wearing had two large holes near the hair level line that were consistent with the discharge of a bullet from a shotgun.

Wells's cousin, Rickie Phillips, was near Wells at the time of the shooting.  "Phillips heard six or seven shots 'all at one time,' and ducked down behind a brick wall.  After the shooting, Phillips saw the three men, carrying black objects in their hands, run back through Wells's yard to an alley; he identified one of the shooters as [Johnson], whom he knew as 'Smokey' and a member of the gang known as the 8-Tray Hoover Crips.  Phillips testified

---

[2]    The underlying facts are taken from Johnson's unpublished opinion on direct appeal.  (*People v. Johnson* (Dec. 13, 1989, B035977) [nonpub. opn.].)  We summarize the facts to provide context and background and do not rely on them in deciding the merits of this appeal.

[3]    Because Yolanda shares the same last name as appellant Michael Johnson we refer to her by her first name.

that about [10] minutes before the shooting, he had seen two of the men who had done the shooting ride bicycles past his group of friends, stop on the sidewalk about two houses away, and look at his friends for about two minutes before riding off."

After Johnson's arrest, Johnson spoke to police about the shooting. "[H]e stated that several days before the shooting 'Gump' told him that Wells had poured beer over Gump's head and was pushing him around; on the day of the shooting, he, 'Fat Rat' and 'Lil Rat' were in the area of 82nd between Figueroa and Hoover; 'Fat Rat' told him that he had just seen Wells standing out front on 84th Street; he told 'Fat Rat' and 'Lil Rat' that they were going to scare Wells 'to keep him from messing with the home boys'; he had a .410 shotgun, 'Fat Rat' and 'Lil Rat' both had .38 revolvers; he carried the shotgun down his pants leg and the three of them walked down the alley behind 84th Street and walked through the houses to 84th Street; he was the first to reach the sidewalk; he took out the shotgun, walked towards Wells, and fired one round towards Wells, but he was not trying to hit him; he turned and ran back to the alley and then toward Vermont; as he was running he heard about 10 shots; he left the shotgun at Mary's house and went home to change his clothes; he stayed the night at 'June Bug's' house and did not see 'Fat Rat' or 'Lil Rat' the next day."

In April 1988, the People charged Johnson in an amended information with the murder of Wells (§ 187, subd. (a)) and the attempted murders of Yolanda and Fisher (§§ 187, subd. (a), 664). The People also alleged several firearm allegations.

A jury trial was held. In May 1988, the jury found Johnson guilty of first degree murder of Wells and attempted murder of Yolanda and Fisher. The jury also found true as to all counts

4

that Johnson personally used a firearm (§§ 1203.06, subd. (a)(1), 12022.5) and that a principal in the crime was armed with a shotgun (§ 12022, subd. (a)).  The trial court sentenced Johnson to 41 years to life.  Johnson appealed, and this court affirmed the judgment.  (*People v. Johnson*, *supra*, B035977.)

B.    *In 1990, Johnson Pled Guilty to First Degree Murder*

On July 30, 1985, Richard Lewis,[4] drove to a hamburger stand and parked in the parking lot.[5]  While he was sitting in the parking lot with his friends, another car approached his car on the driver's side.  There were two men in the car, and one said, " 'What's up Hoover Lite.' "  The passenger then pulled out an automatic pistol and began shooting, killing Lewis.  Someone identified Johnson as the shooter.

Johnson told a probation officer that on the day of the shooting, he and three of his friends saw Lewis's car parked at a hamburger stand.  Johnson and his friends then picked up a nine-millimeter handgun.  "They relocated [Lewis's car] and shot into it."  Johnson said he wished Lewis "had not died and if he could do it over again, he would not have done it."

In June 1988, under the same case number as Johnson's 1988 jury convictions,[6] the People charged Johnson with the murder of Lewis.  The People also alleged that Johnson

---

[4]    Lewis is referred to as both "Lewis" and "Louis Jr." in the record of conviction.  We will refer to him as Lewis because that is how his name is spelled in the information.

[5]    The underlying facts are taken from the probation report. We summarize the facts to provide context and background and do not rely on them in deciding the merits of this appeal.

[6]    The case number for both was A772024.

5

personally used a firearm (§ 12022.5), a principal was armed with a shotgun (§ 12022, subd. (a)), and Johnson was previously convicted of first degree murder in May 1988 (§ 190.2, subd. (a)(2)). Johnson pled guilty to first degree murder of Lewis and admitted the allegations. On March 2, 1990, the trial court sentenced Johnson to life without the possibility of parole for the special circumstance murder (§ 190.2, subd. (a)(2)) and two years for the section 12022.5 firearm allegation. The court dismissed the remaining allegations in furtherance of justice.

C.      *The Superior Court Denied Johnson's Section 1172.6 Petition at the Prima Facie Stage*

In 2021, Johnson filed a section 1172.6 form petition. The petition listed the case number as A772024 and the year of conviction as "March 2, 1990." The superior court appointed counsel for Johnson and ordered the People to file a response.

The People filed a response to Johnson's petition, arguing Johnson failed to state a prima facie case for relief. The People's response referred only to Johnson's 1988 convictions and included exhibits related only to those convictions, not his 1990 conviction. Defense counsel filed a reply that also solely addressed Johnson's 1988 convictions.

At the prima facie hearing, both the People and the defense submitted on their pleadings.[7] The superior court denied the petition. The court noted one of the jury instructions included reference to "natural and probable consequences," but the instruction "did not define the target crime." As to the other jury

---

[7]      Before submitting on his pleadings, defense counsel answered one question from the court regarding the jury instructions from the trial held in 1988.

instructions, the court stated they required the jury to find Johnson acted with express malice. Thus, the court found Johnson was ineligible for relief as a matter of law.

Johnson filed a timely notice of appeal.

## DISCUSSION

A.  *Johnson Forfeited His Claim That the Superior Court Failed To Consider His 1990 Conviction*

Johnson argues the superior court denied his "due process right to a fair hearing" by failing to consider his 1990 conviction. In support of his argument, he points to his section 1172.6 form petition, which lists the date of conviction as "March 2, 1990." He contends the court was required to address his 1990 conviction at the prima facie hearing because he "checked all of the boxes on the petition necessary to state a prima facie case." The People argue that Johnson forfeited his claim on appeal. We agree with the People.

" 'Ordinarily, a criminal defendant who does not challenge an assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on appeal.' " (*People v. McCullough* (2013) 56 Cal.4th 589, 593 (*McCullough*).) Specifically, a defendant is obligated to both object when the error occurs in the superior court and to press the superior court for a ruling. (See *People v. Ramirez* (2006) 39 Cal.4th 398, 450 [although defendant objected to issue, he failed to preserve issue on appeal because "despite the court's invitation to resolve the issue at a later hearing, he did not request such a hearing or otherwise press for a ruling"]; *People v. Morris* (1991) 53 Cal.3d 152, 195, disapproved on other grounds in *People v. Stansbury* (1995) 9 Cal.4th 824, 830 [although defendant moved to exclude

7

testimony pretrial, "[d]efendant was obligated to press for such a ruling and to object to [witness's] testimony until he obtained one"]; *People v. Vargas* (2022) 84 Cal.App.5th 943, 949, fn. 5 [although section 1172.6 petition included a request that the court strike a firearm enhancement, petitioner abandoned claim on appeal because petitioner did not ensure superior court ruled on the request].) The reason for this rule is that " '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.' " (*McCullough*, at p. 593.)

Johnson is correct that he listed his 1990 conviction on his section 1172.6 form petition. The People's written response, however, exclusively addressed Johnson's 1988 convictions. At that point, it was incumbent upon Johnson to bring the omission to the superior court's attention and request a ruling on the 1990 conviction. Johnson failed to do either. His written reply exclusively discussed his 1988 convictions. In addition, at the hearing, Johnson made no mention of his 1990 conviction. Had Johnson brought the issue to the attention of the superior court, it " 'could have been easily corrected or avoided.' " (*McCullough*, *supra*, 56 Cal.4th at p. 593.) Thus, Johnson forfeited his claim on appeal. However, as we will discuss, we construe Johnson's petition as a petition for relief on his 1988 convictions and reverse the superior court's denial. On remand, Johnson is entitled to file a new petition or amend his existing petition to include his 1990 conviction.[8]

---

[8] The People concede Johnson is entitled to amend his section 1172.6 petition or file a new one to include the 1990 conviction.

8

B.    *The Superior Court Erred in Denying Johnson's Petition Regarding His 1988 Convictions*

Johnson contends that if his section 1172.6 petition for his 1988 convictions "was properly before the court," the court erred in denying the petition at the prima facie stage. He asserts the court erred because the jury instructions for aiding and abetting "leave open the possibility that the jury convicted [him] for the murder and attempted murder as an aider and abettor under the natural and probable consequences doctrine." The People do not dispute that Johnson's petition was properly before the court. Instead, the People contend the jury instruction on first degree murder required the jury to find Johnson harbored an intent to kill. Further, the People contend "the jury was not actually instructed on natural and probable consequences."

Preliminarily, although Johnson listed his 1990 conviction and not his 1988 convictions on his section 1172.6 form petition, we construe Johnson's petition as one for relief on his 1988 convictions because both parties treated it as such in the superior court, and neither party on appeal objects to this issue. (Cf. *A.N. v. County of Los Angeles* (2009) 171 Cal.App.4th 1058, 1064 ["[t]he substance of the 'motion to quash' is what mattered, not its label"].) As to the merits, we agree with Johnson and conclude the court erred in denying his petition at the prima facie stage.

1.    *Relevant Legal Principles*

Effective 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Reyes* (2023) 14 Cal.5th 981, 984; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and narrowed the

9

felony-murder rule (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Curiel* (2023) 15 Cal.5th 433, 448-449 (*Curiel*); *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*)).  Section 188, subdivision (a)(3), now prohibits imputing malice based solely on one's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e).  The latter provision now requires the People to prove that the defendant was the actual killer (§ 189, subd. (e)(1)); an aider and abettor to murder who had the intent to kill (§ 189, subd. (e)(2)); or a major participant in an underlying felony listed in section 189, subdivision (a), who acted with reckless indifference to human life as described in subdivision (d) of section 190.2.  (§ 189, subd. (e)(3); see *Curiel*, at p. 448; *People v. Wilson* (2023) 14 Cal.5th 839, 868-869; *Strong*, at p. 708; *Gentile*, at pp. 842-843.)  Senate Bill No. 775 (2021-2022 Reg. Sess.) subsequently clarified the amendments to sections 188 and 189 also applied to attempted murder convictions.  (*People v. Coley* (2022) 77 Cal.App.5th 539, 544.)

Under section 1172.6 "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter," may petition the superior court to vacate the conviction and be resentenced on any remaining counts if the petitioner could not now be convicted of murder, attempted murder, or manslaughter because of the changes to sections 188 and 189.  (§ 1172.6, subd. (a).)

If a section 1172.6 petition contains all the required information, the sentencing court must appoint counsel to represent the petitioner if requested.  (§ 1172.6, subd. (b)(1)(A), (b)(3); see also *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)  The prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing that the petitioner is entitled to relief.  (§ 1172.6, subd. (c).)  If the petitioner makes that showing, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and resentence the petitioner on any remaining counts.  (§ 1172.6, subds. (c) & (d)(1).)

In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971; see *Curiel*, *supra*, 15 Cal.5th at p. 460.)  The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis*, at p. 971; see *Curiel*, at pp. 463-464.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at p. 972; see *People v. Eynon* (2021) 68 Cal.App.5th 967, 975.)

11

"Nevertheless, the court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*. ' "[I]f the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner,' " ' thereby deeming the petitioner ineligible." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52; see *Curiel, supra,* 15 Cal.5th at p. 460; *Lewis, supra,* 11 Cal.5th at p. 971.) "We review de novo whether the trial court conducted a proper inquiry under section 1172.6, subdivision (c)." (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

### 2. *Relevant Jury Instructions*

The trial court instructed the jury with the following relevant instructions: (1) first degree murder (CALJIC No. 8.20); (2) attempted murder with express malice aforethought (CALJIC No. 8.66); (3) aiding and abetting (CALJIC Nos. 3.00-3.01); and (4) conspiracy (CALJIC Nos. 6.10.5-6.16, 6.18, 6.20).

As to first degree murder, the court instructed the jury with the 1987 version of CALJIC No. 8.20 (1987 rev.) (4th ed. 1979). It stated in relevant part: "All murder which is perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought is murder of the first degree."

As to aiding and abetting, the court instructed the jury with the 1987 version of CALJIC No. 3.00 (1987 rev.) (4th ed. 1987) and the 1984 version of CALJIC No. 3.01 (1984 rev.) (4th ed. 1987). CALJIC No. 3.00 stated that principals involved in committing a crime are "equally guilty" and include (1) those who "directly and actively commit or attempt to commit the act constituting the crime" or (2) those who "aid and abet the

12

commission or attempted commission of the crime." It also included a bracketed portion that stated, "One who aids and abets is not only guilty of the particular crimes that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and probable consequences of any act that he knowingly and intentionally aided or encouraged. It is for you, the jury, to determine whether the defendant is guilty of the crime allegedly contemplated, and, if so, whether the crime charged was a natural and probable consequence of the criminal act knowingly and intentionally encouraged."

CALJIC No. 3.01 stated, "A person aids and abets the [commission] [or] [attempted commission] of a crime when he or she, [¶] (1) with knowledge of the unlawful purpose of the perpetrator and [¶] (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, by act or advice aids, promotes, encourages or instigates the commission of the crime."

### 3. *Analysis*

We agree with Johnson that the record does not conclusively establish he was convicted of first degree murder and attempted murder under still-valid theories. Neither the jury instructions nor the verdict forms preclude Johnson from relief under section 1172.6 as a matter of law.

Starting with the jury instructions, the trial court instructed the jury with three theories of liability for first degree murder and attempted murder: (1) express malice aforethought (with deliberation and premeditation for first degree murder); (2) conspiracy; and (3) aiding and abetting. Of importance here, the aiding and abetting instructions included the 1987 version of CALJIC No. 3.00, which stated principals are "equally guilty." It

13

also provided in part: "One who aids and abets is not only guilty of the particular crimes that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and probable consequences of any act that he knowingly and intentionally aided or encouraged." This was an instruction on the natural and probable consequences doctrine. (*People v. Prettyman* (1996) 14 Cal.4th 248, 263-264 (*Prettyman*) [the natural and probable consequences doctrine was incorporated in CALJIC No. 3.00 from 1976 to 1988].) Given these instructions, the jury could have convicted Johnson of both first degree murder and attempted murder based on any of these three theories, including the natural and probable consequences doctrine. (See *Gentile*, *supra*, 10 Cal.5th at p. 838 [until the Supreme Court decided *People v. Chiu* (2014) 59 Cal.4th 155, it was possible to be convicted of first degree premeditated murder under the natural and probable consequences doctrine]; *People v. Montes* (2021) 71 Cal.App.5th 1001, 1006, 1007-1008 [until Senate Bill 775, it was possible to be convicted of attempted murder under the natural and probable consequences doctrine].)

Turning to the verdict forms, the forms did not require the jurors to identify the theory under which they convicted Johnson. Nor did the forms require the jurors to identify whether Johnson was guilty as a perpetrator, aider and abettor, or co-conspirator. (See *Curiel*, *supra*, 15 Cal.5th at p. 467 [jury found defendant guilty of first degree murder, "but it was not required to identify which theory it found persuasive"].) Therefore, it was possible that the jury could have found Johnson guilty, both of first degree murder and attempted murder as an aider and abettor under the natural and probable consequences doctrine. (See *Curiel*, at p. 468 ["The jury could have relied on the natural and probable

14

consequences doctrine to convict Curiel of murder, and the findings required under that theory—even when combined with the finding of intent to kill required by the gang-murder special circumstance—do not encompass all of the elements of any theory of murder under current law"]; *People v. Montes*, *supra*, 71 Cal.App.5th at p. 1007 ["Because appellant's jury was instructed on the natural and probable consequences doctrine for attempted murder, appellant may establish a prima facie showing of eligibility"]; cf. *People v. Coley*, *supra*, 77 Cal.App.5th at p. 546 [defendant "was ineligible for resentencing as a matter of law" because "the jury did not receive instructions that it could convict [him] based on . . . the natural and probable consequences doctrine at trial"].)

The People assert the jury could not have relied on the natural and probable consequences doctrine in convicting Johnson of first degree murder because "[p]remeditated murder was the only theory of first degree murder offered [], and the jury convicted appellant of that crime." The record does not support this assertion. The jury was not instructed that it had to find Johnson acted with premeditated and deliberate malice aforethought to convict him of first degree murder. As noted, the jury was instructed on several theories of murder, all of which would have permitted the jury to convict Johnson of first degree murder. (See *Gentile*, *supra*, 10 Cal.5th at p. 838.) Because there is a possibility the jury relied on the natural and probable consequences doctrine, we cannot say as a matter of law Johnson is ineligible for relief. (See *Curiel*, *supra*, 15 Cal.5th at p. 467 ["we must be confident the jury *necessarily* found" the defendant was convicted under a still-valid theory].)

15

The People also assert "the jury was not actually instructed on natural and probable consequences" because the instruction did not identify any target crime. In making their argument, the People rely on *People v. Estrada* (2022) 77 Cal.App.5th 941 (*Estrada*). *Estrada* is distinguishable.

In *Estrada*, the trial court instructed the jury with CALCRIM No. 400, the instruction on the general principles of aiding and abetting. (*Estrada*, *supra*, 77 Cal.App.5th at p. 946.) The Bench Notes to CALCRIM No. 400 provided in relevant part: " 'If the prosecution is also relying on the natural and probable consequences doctrine, the court should also instruct with the last bracketed paragraph.' " (*Ibid*.) The trial court in *Estrada* instructed the jury with the last bracketed paragraph, which read: " 'Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime.' " (*Ibid*.) The Bench Notes "further instruct[ed] that after CALCRIM No. 400 is given, '[d]epending on which theories are relied on by the prosecution, the court should then instruct' the jury on either (1) 'CALCRIM No. 401, Aiding and Abetting: Intended Crimes' for 'Target Crimes,' or (2) CALCRIM Nos. 402 or 403 for 'Natural & Probable Consequences Doctrine (Non-Target Crimes),' and that the latter is appropriate when 'the prosecution's theory is that any of the crimes charged were committed as a natural and probable consequence of the target crime . . . .' " (*Estrada*, at p. 947.) Only CALCRIM No. 401—regarding direct aiding and abetting—was given to the jury. (*Ibid*.)

The *Estrada* court held the mere inclusion of the bracketed language was not sufficient to conclude that the jury was

16

instructed on a natural and probable consequences theory. (*Estrada*, *supra*, 77 Cal.App.5th at p. 947.) While the inclusion of the bracketed language "was erroneous," the court reasoned there was no reasonable likelihood the jurors could have imputed malice because (1) the prosecutor did not request CALCRIM Nos. 402 and 403 as required under the Bench Notes when proceeding on a natural and probable consequences theory; (2) the instruction did not include other erroneous language associated with the natural and probable consequences theory, such as " 'equally guilty' " language; and (3) the prosecutor did not refer to the natural and probable consequences theory during closing argument. (*Id.* at pp. 947-949.)

None of the court's reasoning in *Estrada* is applicable here. Unlike the CALCRIM No. 400 instruction in *Estrada*, which included merely a general, introductory statement of the natural and probable consequences doctrine (see *Estrada*, *supra*, 77 Cal.App.5th at p. 947), the instruction on aiding and abetting in Johnson's trial, CALJIC No. 3.00 (1987 rev.), included the *entirety* of the natural and probable consequences theory. At the time of Johnson's trial in 1988, there were no further instructions on the natural and probable consequences theory, such as an instruction on the target offense. (Use Note and Comment to CALJIC No. 3.00 (1987 rev.).) That's because there was no requirement that the natural and probable consequences instruction identify a target crime. It was not until 1996 in *Prettyman*, *supra*, 14 Cal.4th 248 that the Supreme Court held that, when the prosecution relies on the natural and probable consequences theory of accomplice liability and the evidence supports an instruction on that theory, the trial court must give "an instruction describing or defining the elements of the target

17

crime." (*Id.* at p. 266; see *People v. Lopez* (2023) 88 Cal.App.5th 566, 572, fn. 6 [because the defendant's trial predated *Prettyman*, the "natural and probable consequences jury instruction did not specify the target crime he was charged with aiding and abetting"].) By not identifying a target crime, the instruction in Johnson's trial, if anything, *broadened* the scope of the natural and probable consequences doctrine to allow the jury to convict Johnson of murder based on a mere finding Johnson intended to aid and abet "unspecified 'nefarious' conduct" of which murder was a natural and probable consequence. (*Prettyman*, at p. 268.)

Moreover, unlike the instruction in *Estrada,* the instruction given at Johnson's trial included the language "equally guilty," which the Judicial Council removed from CALJIC No. 3.00 in 2010 for being potentially "misleading." (*People v. Johnson* (2016) 62 Cal.4th 600, 640 & fn. 5.) Lastly, we cannot conclusively say, as the court did in *Estrada,* that the prosecutor in Johnson's trial did not rely on the natural and probable consequences doctrine because the People did not provide us with the trial transcripts. (Cf. *Estrada, supra,* 77 Cal.App.5th at pp. 948-949.) Therefore, *Estrada* does not alter our conclusion. Because the record leaves open the possibility that Johnson could have been convicted of first degree murder and attempted murder under the natural and probable consequences doctrine, he has made a prima facie case for relief under section 1172.6 as a matter of law.[9]

---

[9] The People do not contend the jury's true finding that Johnson personally used a firearm forecloses his eligibility for relief as a matter of law. (See *People v. Williams* (2024) 103 Cal.App.5th 375, 388 [enhancement under § 12022.53

18

## *DISPOSITION*

The order denying Johnson's petition under section 1172.6 as to his 1988 convictions is reversed. The superior court is directed to issue an order to show cause, give Johnson an opportunity to file a new petition or amend his existing petition to include his 1990 conviction, and conduct further proceedings under section 1172.6.

                                                    STONE, J.

We concur:


            SEGAL, Acting P. J.



            PULOS, J.*

---

subd. (d) for personally and intentionally discharging a firearm and proximately causing great bodily injury "does not necessarily establish the defendant acted with malice aforethought"]; *People v. Offley* (2020) 48 Cal.App.5th 588, 598 [same].)

\*       Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.